# EXHIBIT 1

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 9:14-80666-CIV-HURLEY

LEXISNEXIS RISK SOLUTIONS FL INC.,

    Plaintiff,

v.

JACQUELYN SPIEGEL,

    Defendant.
_____/

**CONSENT JUDGMENT**

THIS CAUSE having come before the Court pursuant to the settlement between LexisNexis Risk Solutions FL Inc. ("LNRS") and Jacquelyn Spiegel ("Spiegel") (all together referred to as the "Parties" or singularly as "Party" to this Consent Judgment), it is hereby ORDERED AND ADJUDGED as follows:

Spiegel is a party to a Confidentiality, Nondisclosure, and Noncompetition Agreement with LNRS (as successor to Seisint, Inc.) dated March 3, 2003 [ECF No. 74-1] (the "Employment Agreement") containing certain post-employment restrictions and a settlement agreement attached hereto as Exhibit A (the "Settlement Agreement") modifying the Employment Agreement and resolving the dispute underlying this action.

As provided in the Employment Agreement (as modified by the Settlement Agreement), Spiegel is prohibited from engaging in competitive intelligence, design, engineering, enhancement, improvement, alteration, testing, or data acquisition functions for any product that is substantially similar to, or competes directly with, LNRS's Accurint product at any time within the twelve (12) month period beginning May 9, 2014 (the "Restriction Period"), after which Spiegel shall have no further restrictions under Section 11 of the Employment Agreement.

Notwithstanding the foregoing, during the Restriction Period, Spiegel may work for Trans Union LLC, Trans Union Risk and Alternative Data Solutions, Inc., and/or TLO, LLC (collectively, "Trans Union") performing only the following duties and responsibilities, so long as she does not engage in any of the activities prohibited above:

> Support sales by developing and improving sales strategies and processes. Prepare revenue forecasts and budgeting. Manage sales pipelines. Track commissions and incentive earnings. Assist in creating territory/region assignments, structuring incentive plans, and setting quotas in connection with sales. The job will be performed in accordance with Trans Union proprietary methodologies. The position does not involve developing, improving or enhancing the TLOxp Report.

Spiegel may begin working for Trans Union in the capacity described above only upon confirmed receipt by counsel for LNRS of an agreed payment from Trans Union of $87,500, and subject to the restrictions set forth in the Employment Agreement as modified above.

To allow confirmation of compliance with this Consent Judgment, and as a condition of the modification described above, Spiegel will provide to LNRS on a monthly basis, on the last business day of each month during the Restriction Period, a statement under penalty of perjury, signed by Spiegel and an authorized representative of Trans Union, that, through the date of the statement, Spiegel and Trans Union have remained in compliance in all respects with the Settlement Agreement and the Employment Agreement.

This Consent Judgment terminates proceedings in this action, except that this Court shall retain jurisdiction to enforce this Consent Judgment. Each Party shall be responsible for its own respective fees, costs, and expenses associated with this action, unless otherwise expressly

Lexis Nexis v. Spiegel
Case No.:  9:14-80666-CIV-HURLEY
Consent Judgment

agreed between the Parties.  The bond posted by LNRS shall be released and returned to LNRS or its surety forthwith.

Based on the foregoing, and upon the Parties' consent as shown, IT IS DONE AND SO ORDERED in Chambers at West Palm Beach, Florida this _____ day of December, 2014.

 

DANIEL T. K. HURLEY
United States District Court Judge

Copies to: Counsel of record

Lexis Nexis v. Spiegel
Case No.: 9:14-80666-CIV-HURLEY
Consent Judgment

Agreed as to form and content:

 */s/ Scott G. Hawkins*
SCOTT G. HAWKINS
Florida Bar No. 0460117
shawkins@jones-foster.com
**JONES, FOSTER, JOHNSTON & STUBBS, PA**
Flagler Center Tower, Suite 1100
505 South Flagler Drive
West Palm Beach, Florida 33401
Telephone: (561) 650-0459
Facsimile: (561) 650-1454

and

W. CHRISTOPHER ARBERY
Georgia Bar. No. 021010
carbery@hagllp.com
**HALL, ARBERY, GILLIGAN,
ROBERTS & SHANLEVER LLP**
Tower Place 100, Suite 1900
3340 Peachtree Road, NE
Atlanta, Georgia 30326
Telephone: (404) 442-8778
Facsimile: (404) 537-5555

ATTORNEYS FOR PLAINTIFF,
LEXISNEXIS RISK SOLUTIONS FL INC.

Lexis Nexis v. Spiegel
Case No.:  9:14-80666-CIV-HURLEY
Consent Judgment

Agreed as to form and content:

 */s/ Ronald D. Shindler*
RONALD D. SHINDLER
Florida Bar No. 781703
rshindler@fowler-white.com
SANDRA I. TART
Florida Bar No. 358134
start@fowler-white.com
**FOWLER WHITE BURNETT, P.A.**
Espirito Santo Plaza, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida  33131
Telephone: (305) 789-9200
Facsimile:  (305) 789-9201

and

STEPHEN RAKUSIN
Florida Bar No. 1834008
Stephen@rakusinlaw.com
**THE RAKUSIN LAW FIRM, P.A.**
2919 East Commercial Boulevard
Fort Lauderdale, Florida  33308
Telephone: (954) 356-0496
Facsimile:  (954) 356-0416

ATTORNEYS FOR DEFENDANT,
JACQUELYN SPIEGEL

p:\docs\27817\00001\pld\1l47838.docx

5

# EXHIBIT A

## SETTLEMENT AGREEMENT

This Settlement Agreement (hereinafter the "Agreement") is made and entered into by and between and among LexisNexis Risk Solutions FL Inc. ("LNRS"), Jacquelyn Spiegel ("Spiegel"), and Trans Union LLC, Trans Union Risk and Alternative Data Solutions, Inc., and TLO, LLC (collectively, "Trans Union") (all together the "Parties" to this Agreement and each individually a "Party" to the Agreement), effective on the first date upon which the Agreement has been executed by all the Parties below (the "Effective Date").

### W I T N E S S E T H:

WHEREAS, Spiegel was employed by LNRS and its predecessors until May 9, 2014;

WHEREAS, Spiegel is a party to a Confidentiality, Nondisclosure, and Noncompetition Agreement with LNRS (as successor to Seisint, Inc.) dated March 3, 2003 (the "Employment Agreement") containing certain post-employment restrictions;

WHEREAS, LNRS and Spiegel are parties to litigation currently pending in the United States District Court for Southern District of Florida, Case No. 9:14-cv-80666-DTKH (the "Lawsuit"), and the United States Court of Appeals for the Eleventh Circuit, Case Nos. 14-12754 and 14-13955 (the "Appeals"); and

WHEREAS, the Parties desire to resolve the Lawsuit and the Appeals and related disputes on terms and conditions that are mutually satisfactory.

NOW, THEREFORE, in consideration of the terms and mutual promises contained herein, the Parties agree as follows:

1. <u>Amendment of the Employment Agreement</u>. The Employment Agreement shall be modified and amended as follows:

    (a) Section 11 of the Employment Agreement shall be modified by adding to the end of that Section a statement as follows:

Notwithstanding the foregoing, Spiegel is allowed to be employed by and perform work for Trans Union solely in the capacity set forth below but shall not perform competitive intelligence, design, engineering, enhancement, improvement, alteration, testing, or data acquisition functions for any product that is substantially similar to, or competes directly with, LNRS's Accurint product at any time within the twelve (12) month period beginning May 9, 2014 (the "Restriction Period"). The restrictions under this Section 11 shall cease to apply upon the expiration of the Restriction Period. The capacity in which Spiegel may work for Trans Union during the Restriction Period is as follows: Support sales by developing and improving sales strategies and processes. Prepare revenue forecasts and budgeting. Manage sales pipelines. Track commissions and incentive earnings. Assist in creating territory/region assignments, structuring incentive plans, and setting quotas in connection with sales. The job will be performed in accordance with Trans Union proprietary methodologies. The position does not involve developing, improving or enhancing the TLOxp Report.

      (b)    Section 24 of the Employment Agreement shall be deemed deleted.

      (c)    All other provisions of the Employment Agreement shall remain unchanged and are incorporated by reference in this Agreement. The Parties acknowledge and agree that the restrictions set forth in Section 11 of the Agreement as modified herein are reasonably necessary to protect LNRS's trade secrets and confidential information.

    2.    <u>Restricted Employment and Non-Inducement of Breach</u>. Spiegel may begin working for Trans Union in the capacity described in Section 1 above only upon confirmed receipt by counsel for LNRS of the Payment from Trans Union described in Section 4 below and otherwise shall comply with the restrictions in the Employment Agreement as modified above.

Trans Union shall abide by the restrictions described in Section 1 above and shall not induce, facilitate, or condone a breach of the Employment Agreement or this Agreement by Spiegel.

3. <u>Monthly Confirmation of Compliance:</u> To allow confirmation of compliance with this Agreement and the Employment Agreement (as amended by this Agreement), and as a condition of the modification in Section 1 above, Spiegel and Trans Union will provide to LNRS on a monthly basis, on the last business day of each month during the Restriction Period, a statement under penalty of perjury, signed by Spiegel and an authorized representative of Trans Union, that, through the date of the statement, Spiegel and Trans Union have remained in compliance in all respects with this Agreement and the Employment Agreement ("Monthly Statement"). Each Monthly Statement shall be sent to counsel for LNRS at carbery@hagllp.com.

4. <u>Payment by Trans Union:</u> In consideration of the promises and other consideration set forth herein, and as a material inducement to LNRS to enter into this agreement, Trans Union shall pay to NLRS the amount of Eighty-Seven Thousand Five Hundred Dollars ($87,500) in a lump sum (the "Payment") within five (5) business days after the Effective Date of this Agreement. Trans Union shall deliver the Payment to counsel for LNRS at the following address: Hall, Arbery, Gilligan, Roberts & Shanlever LLP, 3340 Peachtree Road, N.E., Suite 1900, Atlanta, Georgia 30326, ATTN: W. Christopher Arbery. The Payment shall be held in escrow by counsel for LNRS until entry of the Consent Judgment or other order terminating the Lawsuit by the Court, after which the Payment shall be released to LNRS without restriction.

5. <u>Consent Judgment:</u> Following receipt of the Payment from Trans Union, LNRS and Spiegel will enter into and jointly file a Consent Judgment, in a form substantially identical

to Attachment A to this Agreement, incorporating the terms of this Agreement, modifying the preliminary injunction entered on May 30, 2014, dismissing the Lawsuit, and stating that the District Court retains jurisdiction to enforce the Consent Judgment. Spiegel will withdraw and dismiss the Appeals with prejudice, with the parties bearing their own attorneys' fees and costs. Notwithstanding the foregoing, this Agreement shall be independently actionable and enforceable by means of a legal action in any court of competent jurisdiction in Palm Beach County, Florida.

6. <u>Release Given By Spiegel</u>.

(a) Spiegel hereby releases, acquits, and forever discharges LNRS and all of its parents, subsidiaries, and affiliates, all such entities' owners, shareholders, general or limited partners, joint venturers, directors, officers, employees, agents, representatives, insurers, and attorneys, and any persons acting by, through, under, or in concert with any of them, and all successors and assigns thereof (collectively, the "LNRS Releasees") from any and all claims, counterclaims, charges, complaints, demands, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, entitlements, costs, losses, debts, and expenses (including attorneys' fees and legal expenses), known or unknown, which Spiegel now has, had, or may hereafter claim to have had against the LNRS Releasees, individually or collectively, and any and all remedies associated therewith, arising out of Spiegel's employment and separation from employment with LNRS and becoming employed with Trans Union or LNRS's efforts to enforce the Employment Agreement (the "Spiegel Released Claims"), based on any matter, act, omission, transaction, occurrence, or event that has occurred or is alleged to have occurred up to the time this Agreement is executed by Spiegel. This provision is

conditioned upon entry of the Consent Judgment described in Section 5 above by the Court in the Lawsuit in substantially the same form as presented to the Court.

(b)     Specifically included without limitation in the Spiegel Released Claims knowingly and voluntarily released are all claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq.; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981; the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.; the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.; any and all claims under any federal or state laws pertaining to employment, employment compensation, or employment benefits; personal injury; injury to reputation; injury to property; intentional torts; negligence; wrongful termination; constructive discharge; retaliation; discrimination; harassment; breach of contract; any and all claims based on "public policy"; and any and all claims for recovery of lost wages or back pay, stock options, fringe benefits, liquidated damages, front pay, compensatory and/or punitive damages, attorneys' fees, costs, injunctive or equitable relief, or any other form of relief; and any and all other claims of any kind based on any federal, state, or local constitution, statute, law, rule, regulation, judicial doctrine, contract, or common law, or other theory arising out of any matter, act, omission, transaction, occurrence, or event that has occurred or is alleged to have occurred up to the time Spiegel executes this Agreement.

(c)     Spiegel warrants and represents that she has no outstanding claims or grievances against LNRS or any of the other LNRS Releasees, that she has received all compensation due her by any and all of the LNRS Releasees, whether by contract or by law, and that she has been provided all rights and benefits to which she was entitled without interference by any and all of the LNRS Releasees, including but not limited to straight time pay, overtime pay, vacation, sick

time, paid or unpaid time off, Family and Medical Leave, accommodation for any disability, or any contractual rights or privileges. These warranties and representations have been relied upon by LNRS and constitute consideration for its execution of this Agreement.

7. <u>Releases Given By LNRS</u>. LNRS hereby releases, acquits, and forever discharges Spiegel and Trans Union from any and all claims, counterclaims, charges, complaints, demands, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, entitlements, costs, losses, debts, and expenses (including attorneys' fees and legal expenses), known or unknown, whether asserted affirmatively or by way of defense or offset, which LNRS now has, had, or may hereafter claim to have had against Spiegel or Trans Union, and any and all remedies associated therewith, arising out of Spiegel's employment and separation from employment with LNRS and becoming employed with Trans Union (the "LNRS Released Claims"), based on any matter, act, omission, transaction, occurrence, or event that has occurred or is alleged to have occurred up to the time this Agreement is executed by LNRS. This provision is conditioned upon entry of the Consent Judgment described in Section 5 above by the Court in the Lawsuit in substantially the same form as presented to the Court.

8. <u>Release Given By Trans Union</u>. Trans Union hereby releases, acquits, and forever discharges the LNRS Releasees from any and all claims, counterclaims, charges, complaints, demands, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, entitlements, costs, losses, debts, and expenses (including attorneys' fees and legal expenses), known or unknown, whether asserted affirmatively or by way of defense or offset, which Trans Union now has, had, or may hereafter claim to have had against any of the LNRS Releasees, and any and all remedies associated therewith, arising out of Spiegel's employment and separation from employment with LNRS and becoming employed

with Trans Union or LNRS's efforts to enforce the Employment Agreement (the "Trans Union Released Claims"), based on any matter, act, omission, transaction, occurrence, or event that has occurred or is alleged to have occurred up to the time this Agreement is executed by LNRS. This provision is conditioned upon entry of the Consent Judgment described in Section 5 above by the Court in the Lawsuit in substantially the same form as presented to the Court.

9. *Fees, Expenses, and Tax Consequences*. Each Party shall be responsible for its own respective fees, costs, and expenses associated with the Lawsuit and the Appeals, except for the Payment as provided in Section 4 above. Each Party acknowledges and agrees that it is not undertaking to advise any other Party with respect to any tax consequences, and that she or it is not relying on any guidance or advice from any other Party.

10. *No Assignment*. Each Party warrants and represents that it has not assigned to any other person or entity, and that no other person or entity is entitled to assert on its behalf, any claim against any person or entity released in this Agreement. Each Party further warrants, represents, covenants, and agrees that no person, firm, or other entity has asserted, currently asserts, or to her or its knowledge will assert, a lien or claim of lien with respect to any claims, demands, actions, or causes of action, whether or not asserted in any proceedings, and that no Party shall be obligated in any way to make any payment to any other person, firm, or entity based on the dispute resolved by this Agreement.

11. *Construction*. This Agreement supersedes all previous agreements between or among the Parties with respect to the subject matter hereof, except for the Employment Agreement as modified by this Agreement, which is incorporated herein by reference. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties. Counsel for all Parties

participated in the drafting of this Agreement. This Agreement shall be interpreted under the laws of the State of Florida without regard to conflicts of laws provisions. If any part of this Agreement is declared or determined by a court of competent jurisdiction to be illegal, invalid, or unenforceable, that part shall be modified to the extent necessary to make the entire Agreement enforceable to the fullest extent permissible under applicable law, and otherwise the validity and enforceability of the remaining parts, terms, or provisions shall not be affected.

12. <u>Acknowledgments</u>. The Parties represent and acknowledge: that no promise or inducement has been offered or made except as set forth herein; that, in executing this Agreement, they do not rely and have not relied upon any promise, inducement, representation, or statement about the subject matter, meaning, or effect of this Agreement that is not stated in this document; that the only consideration for executing this Agreement are the promises, and other consideration expressly contained or described herein; that all Parties have read this Agreement or had it read and explained to them, understand all of its terms, and understand that this Agreement constitutes the entire agreement between the Parties; that the Parties have had ample opportunity to consult counsel of their choosing regarding the terms of this Agreement; and that the undersigned are executing this Agreement voluntarily and with full knowledge of its significance after consultation with counsel. Each Party further agrees that the acknowledgments and representations in this paragraph have been relied upon by the other Parties and constitute consideration for their execution of this Agreement.

13. This Agreement may be executed in counterparts for the convenience of the Parties, such that a copy of the Agreement signed by one Party, together with a copy of the Agreement signed by the other party, either in the same document or in separate documents,

shall be deemed one Agreement. A photocopy or electronically scanned image of this Agreement shall be as valid as the original.

THE UNDERSIGNED HAVE CAREFULLY READ THIS SETTLEMENT AGREEMENT AND GENERAL RELEASE; THEY KNOW AND UNDERSTAND ITS CONTENTS; THEY FREELY AND VOLUNTARILY AGREE TO ABIDE BY ITS TERMS; AND THEY HAVE NOT BEEN COERCED INTO SIGNING THIS AGREEMENT. FURTHER, ALL PARTIES ACKNOWLEDGE THAT THEY HAVE HAD AN OPPORTUNITY TO REVIEW THE CONTENTS OF THIS AGREEMENT WITH LEGAL COUNSEL OF THEIR CHOOSING AND HAVE RECEIVED ALL ADVICE NECESSARY, IF ANY, TO UNDERSTAND THE TERMS OF THIS AGREEMENT.

_____/s/ Spiegel_____     \_\_\_12/17/14\_\_\_
**Jacquelyn Spiegel**                Date


_____     _____
Authorized Representative            Date
**Trans Union LLC**

_____
Printed Name and Title


_____     _____
Authorized Representative            Date
**Trans Union Risk and Alternative Data Solutions, Inc.**

_____
Printed Name and Title

shall be deemed one Agreement. A photocopy or electronically scanned image of this Agreement shall be as valid as the original.

THE UNDERSIGNED HAVE CAREFULLY READ THIS SETTLEMENT AGREEMENT AND GENERAL RELEASE; THEY KNOW AND UNDERSTAND ITS CONTENTS; THEY FREELY AND VOLUNTARILY AGREE TO ABIDE BY ITS TERMS; AND THEY HAVE NOT BEEN COERCED INTO SIGNING THIS AGREEMENT. FURTHER, ALL PARTIES ACKNOWLEDGE THAT THEY HAVE HAD AN OPPORTUNITY TO REVIEW THE CONTENTS OF THIS AGREEMENT WITH LEGAL COUNSEL OF THEIR CHOOSING AND HAVE RECEIVED ALL ADVICE NECESSARY, IF ANY, TO UNDERSTAND THE TERMS OF THIS AGREEMENT.

_____  _____
**Jacquelyn Spiegel**             Date

[signature]                       12/18/14
Authorized Representative         Date
**Trans Union LLC**

Timothy J. MARTIN, EVP
Printed Name and Title

[signature]                       12/18/14
Authorized Representative         Date
**Trans Union Risk and Alternative Data Solutions, Inc.**

Curtis Miller, VP
Printed Name and Title

_____        _____
Authorized Representative              Date
**TLO, LLC**


_____
Printed Name and Title


*Meredith Sidewater*      12.17.14
Authorized Representative              Date
**LexisNexis Risk Solutions FL Inc.**

Meredith Sidewater
Senior Vice President
General Counsel
Printed Name and Title


4831-6468-5089, v. 1